465 So.2d 48 (1985)
STATE of Louisiana
v.
Checo YANCY.
No. KA-2431.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1985.
Rehearing Denied March 27, 1985.
Writ Denied May 31, 1985.
*50 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Joanne C. Marier, Asst. Dist. Atty., New Orleans, for appellee.
James C. Lawrence, Jr., Dwight Doskey, New Orleans, for appellant.
Before REDMANN, C.J., and GULOTTA and WILLIAMS, JJ.
GULOTTA, Judge.
Defendant appeals his convictions for aggravated kidnapping (LSA-R.S. 14:44) and attempt aggravated crime against nature (LSA-R.S. 14:89.1). We affirm.
In the early morning hours of March 6, 1983, the seventeen year old female victim and her boyfriend, while walking in the New Orleans French Quarter, were approached by the defendant, Checho W. Yancy, in his automobile. Impersonating a police officer, Yancy, a civilian deputy clerk for the Orleans Parish Criminal District Court, had an "Orleans Parish Deputy" sign on his dashboard and flashed a police badge and identification card. After learning the girl's age, Yancy ordered the couple into his car under the pretense of arresting the girl for violating a juvenile curfew law and the young man for contributing to the delinquency of a minor. He confiscated the young man's driver's license.
According to the female victim, after they got into the car, defendant asked them if they had any money. He then told them that it would cost $750.00 to "get them out of jail", and asked the young man if someone in his family had the money. After driving for approximately fifteen to twenty minutes, Yancy stopped at the corner of Lafitte and Broad Streets and told the man to call his mother from a nearby pay telephone to obtain the funds. After the young man exited the vehicle, defendant grabbed the female victim by her arm and hair, forced her to close the car door, and drove away. The young man subsequently called the police and gave them a description of the defendant and his vehicle.
The female victim testified that after leaving the telephone booth, defendant forced her head down in his lap and ordered her to commit an act of oral sex on him, threatening to rape her if she "didn't do the job good". He stated that he had a gun. She also testified that defendant forced her to partially disrobe while he touched her breasts and genitals. The victim remained in the front seat of the moving car until Yancy was arrested by police approximately fifty minutes later, at approximately 5:20 a.m.
Defendant, on the other hand, testified that he chanced upon the girl and her boyfriend arguing at a phone booth at Lafitte and Broad Streets, showed his identification card to the young man so that he might "calm down", and consented to the girl's request for a ride. According to Yancy, the girl offered sex in exchange for money, but he refused. He denied that any sexual activity occurred between him and the victim.
Appealing, defendant raises assignments of error relating to a request for an in camera inspection of grand jury testimony and to the sufficiency of evidence to support the convictions. Before turning to the merits of these contentions, we note that there are no errors patent on the face of the record.

ASSIGNMENT OF ERROR ONE
In his first assignment of error, defendant contends the trial judge erred in denying his request for an in camera inspection of the grand jury testimony of the victim and her companion to determine if there were any material inconsistencies or exculpatory material. Defendant specifically seeks statements by the female victim before the grand jury that may be inconsistent with the results of medical, chemical and scientific tests for oral copulation. According to defendant, a query as to the victim's prior explanations for the absence of semen on towels and clothing is appropriate and creates a "strong" showing of need to examine her testimony before the grand jury. We disagree.
*51 It is well-settled that a defendant is generally not entitled to inspect the transcript of grand jury testimony. LSA-C. Cr.P. Art. 434; State v. Ates, 418 So.2d 1326 (La.1982); State v. Prestridge, 399 So.2d 564 (La.1981). Disclosure of grand jury testimony may be warranted, however, if the defendant can show a "particularized need" for release of the information. State v. Hennigan, 404 So.2d 222 (La.1981); State v. Martin, 376 So.2d 300 (La.1979). Likewise, where a defendant makes a "specific request" for material in possession of the State to impeach a witness' testimony that might determine innocence or guilt, the prosecution must either disclose the material to the defense or submit it for in camera inspection. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Perkins, 423 So.2d 1103 (La.1982); State v. Davenport, 399 So.2d 201 (La.1981); State v. Sylvester, 388 So.2d 1155 (La.1980).
In the instant case, defendant has made no valid specific request or shown any particularized need for examination of the victim's testimony before the grand jury. Defendant seeks to examine the witness' prior statements for inconsistency with scientific test results. Significantly, however, defendant received copies of these scientific reports and used them in cross examining the female victim during trial. He is not alleging that her prior statements are inconsistent with her testimony at trial. Under these circumstances, inspection of the grand jury testimony would, in all likelihood, produce only cumulative evidence with limited, if any, impeachment value. Accordingly, in camera inspection of the grand jury testimony is not relevant in this case.
This assignment lacks merit.

ASSIGNMENT OF ERROR TWO
Defendant seeks reversal of his aggravated kidnapping conviction because of the State's failure to prove his intent to extract ransom as a condition for releasing the victim as required by LSA-R.S. 14:44. Defendant points out the female victim did not testify that defendant promised to release her in exchange for fellatio, and the evidence adduced therefore supports only a conviction of simple kidnapping.
LSA-R.S. 14:44(1) defines aggravated kidnapping as the forcible seizing and carrying of a person from one place to another with the intent of forcing the victim or some other person to give up anything of present or prospective value in order to secure the release of the person seized. Despite proof of forcible seizure of the victim and the giving up of a valuable, an aggravated kidnapping conviction cannot stand unless there is also proof of the essential element of an intention to extort or to deprive the victim of a valuable as a condition of the victim's release. State v. Moore, 432 So.2d 209 (La.1983); State v. Rodrigue, 441 So.2d 1274 (La.App. 1st Cir. 1983), writ denied 445 So.2d 436 (La.1984).
In State v. Sonnier, 402 So.2d 650 (La. 1981), the Supreme Court stated that sexual gratification constitutes something of apparent value for purposes of the statute. However, in Sonnier, the evidence indicated that the victim submitted sex "in return for the couple's safe release". Supra, at p. 654. In the instant case there is no evidence of a promise made in return for the sexual submission. The State argues nonetheless that where a sexual favor is exacted, there is a reasonable implication that the victim will be released.
In view of the events surrounding the kidnapping, however, this aspect of defendant's assignment of error is academic.
Although there is no specific evidence that Yancy promised to release the victim in exchange for oral sex, the kidnapped couple testified that immediately after accosting them under the pretense of a lawful arrest, Yancy asked them if they had any money and informed that they would need $750.00 "to get out of jail". He thereafter transported them to a pay telephone to permit the female victim's boy friend to telephone his family to obtain money. Although this action could be seen simply as a ploy by the defendant to get *52 the young man out of the car and to isolate the female victim, viewing it in the light most favorable to the prosecution, we conclude that the jury could reasonably interpret this demand as a manifestation of the defendant's intent to obtain a ransom in exchange for release of the young couple. We hold, therefore, that the State proved the essential elements of aggravated kidnapping.
Accordingly, we find no merit to this assignment of error.

ASSIGNMENT OF ERROR THREE
In the final assignment of error, defendant contends the evidence was insufficient to support his conviction for attempt aggravated crime against nature. Relying on State v. Pruitt, 449 So.2d 154 (La.App. 4th Cir.1984), writ denied 450 So.2d 1309 (La. 1984), he argues that the State failed to prove an essential element of the crime, i.e. that heterosexual fellatio is the "unnatural carnal copulation" within the meaning of LSA-R.S. 14:89 and 89.1. Defendant claims that sexual battery (LSA-R.S. 44:43.1) may be responsive to the charge in this case, because the State failed to introduce expert testimony on the nature of the act performed.
We reject this argument.
Oral-genital sex between members of the opposite sex has been found to constitute a crime against nature. State v. Winn, 412 So.2d 1337 (La.1982); State v. Rodrigue, 441 So.2d 1274 (La.App. 1st Cir. 1983), writ denied 445 So.2d 436 (La.1984). There is no requirement in the statute or the case law that the State introduce expert testimony from medical or sexual authorities to prove the "unnatural" element of the crime.
Defendant's reliance on State v. Pruitt, supra, is misplaced. In the cited case, this court concluded that fairness required that a defendant charged with crime against nature by soliciting heterosexual oral sex be given an opportunity to present expert testimony on the question whether oral sex between a man and a woman is "unnatural". We concluded, in Pruitt, that the trial judge's exclusion of testimony by defendant's expert on this issue effectively denied the defendant his right to present a defense. The Pruitt decision did not hold, however, that the State must present expert testimony on the nature of heterosexual oral sex and did not reach the question whether it is within the definition of "unnatural carnal copulation" within the meaning of the crime against nature statute. The Pruitt case dealt with a purely evidentiary question and in no way changed the substantive criminal law.
Viewing the evidence in the light most favorable to the prosecution, we conclude there is sufficient proof to support the jury's guilty verdict of attempt aggravated crime against nature in this case. Accordingly, this assignment of error lacks merit.
For the foregoing reasons, defendant's convictions and sentences are affirmed.
AFFIRMED.
REDMANN, C.J., concurs.
REDMANN, Chief Judge, concurring.
I concur in affirming defendant's sentence, but I would prefer to find the aggravation of the kidnapping in "the intent thereby to force the victim ... to grant any advantage ..., in order to secure a release...," R.S. 14:44. The evidence proves that defendant kidnapped the victim with the intent to force her to "grant [the] advantage" of sexually gratifying him before he would release her.
I would add that the aggravated crime against nature statute, R.S. 14:89.1, does not suffer from the infirmity that my dissent in Pruitt noted in the crime against nature statute, R.S. 14:89.